UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KRISTIAN PARKS, *Plaintiff*, | ) | No. 1:25-CV-138 |
| v. | ) | Judge Collier<br>Magistrate Judge Dumitru |
| NORDSON MEDICAL OF NH INC., *et al.*, *Defendants.* | ) | |

**M E M O R A N D U M**

Before the Court is a motion to dismiss for failure to state a claim and to compel arbitration by Defendants Nordson Medical of NH Inc. ("Nordson Medical"), Cody E. Slinger, Wanda F. Ragland, Christy E. Carter, Russell A. Atkins, and Jeffrey R. Hall. (Doc. 9.) Defendants request the Court compel arbitration and dismiss this case, or in the alternative, stay all proceedings pending completion of arbitration. (*Id.*) Plaintiff, Kristian Parks, filed her response (Doc. 13), and Defendants filed their reply brief (Doc. 14). Also before the Court is a *pro se* motion by Plaintiff for injunctive relief against Defendants Nordson Medical, Slinger, Ragland, Carter, Atkins, and Hall. (Doc. 15.) Defendants have responded in opposition. (Doc. 16.)

## I. <u>BACKGROUND</u>

This case arises from alleged workplace misconduct that began in January 2024 while Plaintiff, a Black female, was working for Nordson Medical, a company that "designs, develops, and manufactures complex medical devices and component technologies." (Doc. 10 at 1.) According to the complaint, Russell Atkins "began making monkey and cow mooing sounds to Plaintiff in the workplace." (Doc 1 ¶ 14.) Plaintiff claims the on-duty managers "aided and abetted [the] conduct" by failing to stop the harassment. (*Id.*) Plaintiff also claims she reported this

behavior to supervisors who "failed to initiate and perform a[n] adequate investigation" into the report "as required under Nordson Medical's internal racial harassment policy." (*Id.* ¶ 15.) After making the report, Plaintiff alleges her supervisor, Wanda Ragland, retaliated against her for complaining about Atkins. (*Id.* ¶ 17.)

Plaintiff further alleges Atkins continued to harass her in the following months. (*Id.* ¶¶ 19–22.) On June 27, 2024, Plaintiff filed a human resources complaint, but "Nordson [Medical] made a decision not to discipline [] Atkin's [sic] racial/sexual harassment and intimidation" after finding Plaintiff's report could not be substantiated. (*Id.* ¶¶ 23–25.) Following this, Plaintiff received disciplinary actions for six unexcused tardies. (*Id.* ¶ 29.) Plaintiff was also sent home from work for refusing to work alongside Atkins. (*Id.* ¶ 28.) Plaintiff alleges Defendants "engaged in unlawful employment practices and retaliate[ed] towards Plaintiff" for reporting the managers' misconduct. (*Id.* ¶ 31.)

Based on these facts, on May 1, 2025, Plaintiff filed this suit alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*; retaliation, racially and sexually antagonistic abusive-hostile work environment, and intentional race discrimination in contract under 42 U.S.C. §§ 1981 *et seq.*; discrimination, retaliation, and malicious harassment civil rights intimidation under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301 and § 4-21-401; constitutional violations under the Fifth and Fourteenth Amendments of the United States Constitution and Article I § 8 and Article XI § 8 of the Tennessee Constitution; and reckless, negligent, and intentional infliction of emotional distress under Tennessee law. (Doc. 1 at ¶¶ 77–129.)

On May 27, 2025, Defendants moved to dismiss the complaint for failure to state a claim and to compel arbitration. (Doc. 9.) Defendants rely on the arbitration agreement, which states in part:

> Other than as provided in this Agreement, to the maximum extent permitted under federal law, both you and Nordson agree that any claims, disputes or controversies that could otherwise be raised in court that Nordson has against you or that you have against Nordson, arising out of or relating to: (1) your application for employment with Nordson; (2) your employment with Nordson; and/or (3) the termination of your employment with Nordson shall be resolved exclusively by arbitration rather than in court.

(Doc. 10-1 at 2.) The agreement provides that some, but not all, of the types of claims covered by this Agreement are:

- discrimination or harassment on the basis of race, color, sex, age, national origin, ancestry, citizenship, religion, military or veteran status, disability or any other unlawful basis;
- claims under any statutes, regulations, or other laws applicable to applicants, to employees, or to the employment relationship, for example, claims under: Age Discrimination in Employment Act; the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964; the Equal Pay Act; the Fair Credit Reporting act; the Fair Labor Standards Act; the Family and Medical Leave Act; and the Pregnancy Discrimination Act;
- unlawful retaliation; . . .
- employment-related tort claims . . . .

(*Id.*) The arbitration agreement also has a delegation clause, which states, "The arbitrator, not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that this Agreement is void or voidable." (*Id.* at 4.)

Plaintiff responded in opposition to Defendants' motion to dismiss and compel arbitration (Doc. 13), and Defendants replied (Doc. 14). In her response to the motion to dismiss and compel arbitration, Plaintiff alleges Atkins stated "baby got back" towards her. (Doc. 13 at 3.) She also alleges Atkins looked over at Plaintiff in the breakroom and began "gyrating his hips and pelvis

area in front of [her], directly at [her] and began imitating that he was engaging in sexual intercourse." (*Id.*)

On June 20, 2025, Plaintiff moved for injunctive relief. (Doc. 15.) Plaintiff requests the Court to have Defendants "immediately cease all harassment, antagonism, and intimidation" and to move Atkins, her "racial and sexual Abuser," away from her at work. (*Id.* at 3.) Defendants responded in opposition. (Doc. 16.)

Because the resolution of Defendants' motion to dismiss and compel arbitration may render Plaintiff's motion for injunctive relief moot, the Court will first address the motion to dismiss and compel arbitration.

## II. <u>STANDARD OF REVIEW</u>

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq.*, allows a party to petition a federal court for enforcement of an arbitration agreement. 9 U.S.C. § 4. The FAA provides as follows regarding staying proceedings that are referable to arbitration:

> the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. When a party is aggrieved by another party's failure to arbitrate in accordance with a written agreement to do so, that party "may petition a federal court for an order directing that such arbitration proceed in the manner provided for" by the contract. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). The FAA "manifests a liberal policy favoring arbitration agreements." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 24, 103 (1983)).

To compel arbitration, the district court must determine: (1) the parties agreed to arbitrate; (2) the claims asserted fall within the scope of the arbitration agreement; and (3) Congress did not intend for those claims to be non-arbitrable. *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)). If the party seeking to compel arbitration establishes the existence of a valid agreement to arbitrate and there is no genuine dispute, the court must grant the motion to compel arbitration and stay or dismiss proceedings until the completion of the arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). "It is well settled that judicial protection of pre-dispute arbitral agreements extends to agreements to arbitrate statutory employment discrimination claims." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).

## III. DISCUSSION

Defendants ask the Court to compel Plaintiff to arbitrate the matter. (Doc. 9.) The Court must (1) determine whether the parties agreed to arbitrate, (2) determine the scope of that agreement, and (3) determine the arbitrability of the claim. *Gavette v. United Wholesale Mortg., LLC*, No. 24-1557, 2025 WL 318224, at *1 (6th Cir. Jan. 28, 2025) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

### A. Agreement to Arbitrate

"[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). As the parties moving to compel arbitration, Defendants must come forward with some evidence establishing the existence of a valid agreement to arbitrate. *See Glazer*, 394 F.3d

at 450; *see also Foust v. Comcast Corp.*, No. 3:19-CV-173, 2020 WL 1891755, at *4 (E.D. Tenn. Jan. 28, 2020) (citations omitted).

Defendants meet their initial burden here. Defendants submit the arbitration agreement, apparently e-signed by Plaintiff, containing the following language: "**YOU UNDERSTAND THAT THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE AGREEMENT BE SUBMTTED TO ARBITRATION PURSUANT TO THE ARBITRATION AGREEMENT RATHER THAN A JUDGE AND JURY IN COURT.**" (Doc 10-1 at 6.) This all-caps and bolded language is listed right before Plaintiff's e-signature. (*Id.*) The arbitration agreement states it covers disputes involving Nordson Medical's "subsidiaries, affiliated companies, current or former officers, directors, **employees**, vendors, clients, customers, agents, successors, and assigns." (Doc. 10-1 at 2 (emphasis added).) This evidence satisfies Defendants' initial burden of demonstrating that Plaintiff accepted Nordson Medical's offer to arbitrate claims against Nordson Medical and its employees such as Plaintiff's coworkers and supervisors. *See Memmer*, 135 F.4th at 405.

Therefore, the burden shifts to Plaintiff to show there is a genuine dispute as to the agreement to arbitrate. *See id*. Yet, Plaintiff does not dispute that she electronically signed the arbitration agreement on May 3, 2023. (Doc. 13 at 2.) Nor does she dispute the absence of fraud or undue influence bearing on the validity of the arbitration agreement. (*Id*. at 4.) Therefore, the Court concludes the parties did agree to arbitrate.

**B. Scope of the Arbitration Agreement**

The next step is to consider whether the claims asserted fall within the scope of the arbitration agreement. *Memmer*, 135 F.4th at 406. The arbitration agreement states the following:

Some, but not all, of the types of claims covered by this Agreement are:

- discrimination or harassment on the basis of race, color, sex, age, national origin, ancestry, citizenship, religion, military or veteran status, disability or any other unlawful basis;
- claims under any statutes, regulations, or other laws application to applicants, to employees, or to the employment relationship, for example, claims under: Age Discrimination in Employment Act; the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964; the Equal Pay Act; the Fair Credit Reporting act; the Fair Labor Standards Act; the Family and Medical Leave Act; and the Pregnancy Discrimination Act;
- unlawful retaliation; . . .
- employment-related tort claims . . . .

(Doc. 10-1 at 2.) The Court finds Plaintiff's claims alleging discrimination, retaliation, and employment-related torts against Nordson Medical and their employees fall within the scope of the arbitration agreement.

**C. Arbitrability of Plaintiff's Claims**

The next inquiry is whether Plaintiff's claims are arbitrable. The Court of Appeals for the Sixth Circuit "approach[es] questions of arbitrability 'with a healthy regard for the federal policy favoring arbitration.'" *Gavette,* 2025 WL 318224, at *1 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

Defendants argue the parties clearly and unmistakably intended to delegate questions of arbitrability to an arbitrator because of the delegation clause, which states:

> Who Will Decide If A Claim Is Subject to Arbitration Under this Agreement?
>
> The arbitrator, not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that this Agreement is void or voidable.

(Doc. 10-1 at 4.) Defendants note the Sixth Circuit has consistently concluded that similar language constitutes a clear and unmistakable delegation of arbitrability to the arbitrator. (Doc. 10 at 9.) Defendants argue that "the Mutual Arbitration Agreement includes robust language

delegating all gateway issues – arbitrability and 'interpretation, applicability, enforceability, or formation to this Agreement' – to an arbitrator." (*Id.* at 9–10.)

The Court agrees. The above clause "constitutes a delegation clause, clearly and unmistakably showing that the parties agreed to arbitrate issues of arbitrability." *See Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021) (citing *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 398 (6th Cir. 2017) (noting that the parties clearly and unmistakably agreed that an arbitrator would determine gateway arbitrability issues through a clause requiring arbitration of "[a]ll claims relating to your account, . . . *including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision*")).

Nevertheless, Plaintiff argues that despite any valid arbitration agreement or delegation clause, after the passage of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401 and 402, none of her claims in this case are referrable to arbitration and should instead remain in district court. (Doc. 13 at 1.) Plaintiff suggests, "Congress pass[ed] the EFAA on the heels of the #Me Too movement, which highlighted that arbitration could be used to hinder public awareness of sexual harassment claims and potentially deter employees from pursuing claims." (*Id*. at 6.) Plaintiff argues the EFAA applies to her claims because Atkins stated "baby got back" towards her. (*Id*. at 3.) She also alleges Atkins looked over at her in the breakroom and began "gyrating his hips and pelvis area in front of [her], directly at [her] and began imitating that he was engaging in sexual intercourse." (*Id*.) She asserts that it is her "right" to have her claims resolved in court rather than by an arbitrator. (*Id*. at 1.)

The Court will first address the arbitrability of Plaintiff's claims in light of the EFAA. The Court will then address the arbitrability of Plaintiff's motion for injunctive relief.

### 1. The EFAA

Congress recently enacted the EFAA, which "allows an individual claiming sexual harassment or assault to elect judicial resolution, rather than arbitral resolution of their claims, even if the individual previously agreed to arbitrate such claims if they arose." *Memmer*, 135 F.4th at 406 (discussing the new statute in light of arbitrability).

The EFAA amends the FAA as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The statute defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

"Because the EFAA is so new, there are few decisions interpreting it." *Bruce v. Adams & Reese, LLP*, No. 3:24-CV-00875, 2025 WL 611071, at *13 (M.D. Tenn. Feb. 25, 2025) (quoting *Williams v. Mastronardi Produce, Ltd.*, No. 23-13302, 2024 WL 3908718, at *6 (E.D. Mich. Aug. 22, 2024)). The majority of district courts have concluded that the EFAA precludes arbitration of the entire case, "so long as the complaint includes a plausible sexual harassment/assault claim." *Id.* at 14.

Defendants argue the EFAA does not apply here because Plaintiff has not alleged a plausible sexual harassment claim. They state, "Plaintiff cannot avoid arbitration merely by labeling a claim as alleged sexual harassment; she must plead facts that, if true, would establish a plausible sexual harassment claim under applicable federal or state law." (Doc. 14 at 2.)

Both Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act ("THRA") prohibit sexual harassment that creates a hostile or abusive work environment. *Austin v. Alexande*r, 439 F. Supp. 3d 1019, 1024 (M.D. Tenn. 2020) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999)); *see also Jones v. BWAY Corp.*, No. 222-CV-02683, 2024 WL 781040, at *3 (W.D. Tenn. Feb. 26, 2024). "To state a claim for hostile work environment under Title VII or the THRA, a plaintiff must plead facts to show that: (1) she belonged to a protected class, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) Defendants knew or should have known about the harassment and failed to act." *Id*. (citing *Waldo v. Consumers Energy Co*., 726 F.3d 802, 813 (6th Cir. 2013)).

A court determines whether a hostile work environment has been created by looking at all the circumstances "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Schelle v. City of Piqua, Ohio*, No. 24-3980, 2025 WL 1592135, at *4 (6th Cir. June 5, 2025). The threshold for sexual harassment to constitute a hostile work environment is relatively high in the Sixth Circuit. *Jones*, 2024 WL 781040, at *3 (collecting cases). Title VII was not designed to "purge the workplace of vulgarity," *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)), and "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not create an abusive work environment. *Schelle*, 2025 WL 1592135, at *4 (quoting *Clark Cnty School Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).

Plaintiff makes two factual allegations in support of her sexual harassment claim.[1] First, Plaintiff alleges that, in March 2024, Atkins stated, "baby got back," as Plaintiff began to sit down in a chair. (Doc. 13 at 3.) Second, Plaintiff alleges that, in May 2024, Atkins looked over at Plaintiff in the breakroom and began "gyrating his hips and pelvis area in front of [her], directly at [her] and began imitating that he was engaging in sexual intercourse." (*Id.*)

Taking these allegations as true, Atkins's comments and movements, although vulgar, do not meet the high threshold for sexual harassment. *See Schelle*, 2025 WL 1592135, at *4. The two incidents occurred two months apart, were limited to short periods of time, and were merely offensive in nature. This is insufficient to plead that she suffered from conduct that was so severe and pervasive to constitute an abusive work environment. *See id.* (citing *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000) (finding allegations of sexual harassment, including a male supervisor making sexual advances on plaintiff and making several lewd jokes about her appearance including calling her "hot lips," were not severe or pervasive enough to state a claim for relief)); *see also Rayford v. Illinois Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012) (finding comments made to a male employee three or four times per week, such as being called "sweet booty" and being told a co-worker "wanted to mix coffee with his cream" were not so severe and pervasive that a reasonable person would find his work environment hostile and abusive); and *Breeden v. Frank Brunckhorst Co., LLC*, No. 2:19-cv-2269, 2020 WL 1929344, at *4 (S.D. Ohio Apr. 21, 2020) (finding allegations of sexual harassment, including comments about seeing the plaintiff naked and getting a "boob job," were not severe or pervasive enough to state a claim for relief).

---

[1] In her complaint, Plaintiff also alleges she was subjected to animal noises, including cow, monkey, and turkey noises. (Doc 1. ¶ 14.) The Court does not consider this a sexual-harassment allegation, as Plaintiff classifies it as racial harassment in her complaint. (*Id.* ¶¶ 15, 17.)

Because Plaintiff's sexual-harassment allegations do not meet the threshold of stating a plausible claim for sexual harassment, the Court will not apply the EFAA. The Court finds that the parties agreed to arbitrate, Plaintiff's claims are within the scope of the agreement, and the claims are arbitrable. The Court will refer Plaintiff's underlying claims to arbitration.

**2. Plaintiff's Motion for Injunctive Relief**

Also before the Court is Plaintiff's motion seeking injunctive relief against Defendants. (Doc. 15.) Plaintiff requests the Court to have Defendants "immediately cease all harassment, antagonism, and intimidation" and to move Atkins, her "racial and sexual Abuser," away from her at work. (*Id*. at 3.) The Court must determine whether it has authority to rule on Plaintiff's motion for injunctive relief or whether the arbitrability question must go to an arbitrator.

Preliminary injunctions are governed by Rule 65(a) of the Federal Rules of Civil Procedure. In determining whether to grant a request for preliminary injunctive relief, the Court must consider: (1) whether a plaintiff has shown a strong or substantial likelihood or probability of success on the merits of the case; (2) whether a plaintiff will suffer irreparable injury if the injunction is not granted; (3) whether granting the injunction will cause potential harm to others; and (4) the impact of the injunction upon the public interest. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

Courts generally retain jurisdiction to provide emergency relief in any case that satisfies the normal four-factor test for preliminary injunctions "where relief to preserve the status quo is essential to ensure that the arbitration is a meaningful, rather than hollow, proceeding." *SmithGroup, Inc. v. Pure Architecture & Dev., PLLC*, No. 1:24-CV-249, 2024 WL 3179176, at *5 (W.D. Mich. May 9, 2024).

According to the arbitration agreement, "The arbitrator shall have the authority to: award the same damages and other relief on an individual basis that would have been available in court pursuant to applicable law." (Doc. 10-1 at 4.) Moreover, the parties' agreement incorporates the American Arbitration Association's ("AAA") Arbitration Rules. *See Mad Mobile, Inc. v. Meijer Great Lakes Ltd. P'ship,* 702 F. Supp. 3d 620, 625 (W.D. Mich. 2023). The AAA rules permit an arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of . . . the arbitrability of any claim . . . without any need to refer such matters first to a court" and to "take whatever interim measures he or she deems necessary, including injunctive relief." *See id.*

Therefore, "this is not a situation in which a party must resort to the courts to freeze the status quo during arbitration—the arbitrator here has the power to do that himself or herself." *See SmithGroup, Inc.*, 2024 WL 3179176, at *5 (citing *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1386 (6th Cir. 1995)). Even without emergency relief from this Court, a meaningful arbitration can occur, especially because the arbitrator is empowered to award injunctive relief under the agreement the parties expressly adopted. *See id.* at 6. The ultimate issue here, however, is whether the Court must refer the issue of arbitrability with respect to injunctive relief to the arbitrator.

In *Manlove v. Volkswagen Aktiengesellschaft*, a district court in the Eastern District of Tennessee considered an arbitration agreement similar to the one at issue here:

> The arbitration agreement provides for claims relating to Plaintiff's employment to be submitted to mandatory arbitration, subject to specified exceptions:
>
> 1) Introduction . . . Employee and [VW America] agree to submit (with exceptions noted below) claims or controversies relating to Employee's employment (or the termination of that employment) to final and binding arbitration before a neutral arbitrator and not to any court, as specified in greater detail below.

> 2) Submission to Arbitration. Any and all disputes which involve or relate in any way to Employee's employment (or termination of employment) with [VW America], whether initiated by Employee or by [VW America], shall be submitted to and resolved by final and binding arbitration. **However, nothing in this Agreement shall be construed to restrict or prevent either party from pursuing injunctive relief in a court of competent jurisdiction.**

And, finally, the agreement contains a broad delegation clause:

> 5) Arbitrator's Authority . . . The arbitrator shall have exclusive authority to resolve any Claims, including, but not limited to, a dispute relating to the **interpretation, applicability, enforceability or formation of this Agreement**.

No. 1:18-CV-145, 2019 WL 2291890, at *2 (E.D. Tenn. Jan. 11, 2019) (emphasis added). The court in *Manlove* noted, "there [was] no question Plaintiff's claims for purely injunctive relief may be brought in a court of law," but nevertheless compelled arbitration due to the broad delegation clause that clearly and unmistakably delegated threshold issues of arbitrability of all claims—including those for injunctive relief—to an arbitrator. *Id.* at *3 (citing *AT&T Techs, Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 649 (1986) and *Henry Schein, Inc. v. Archer & White Sales*, *Inc.* 586 U.S. 63, 71 (2019)).

In the case at hand, the arbitration agreement states:

> Other than as provided in this Agreement, to the maximum extent permitted under federal law, both you and Nordson agree that any claims, disputes or controversies that could otherwise be raised in court that Nordson has against you or that you have against Nordson, arising out of or relating to: (1) your application for employment with Nordson; (2) your employment with Nordson; and/or (3) the termination of your employment with Nordson shall be resolved exclusively by arbitration rather than in court.

(Doc. 10-1 at 2.) Similar to the agreement in *Manlove*, the agreement includes a carve-out for provisional injunctive relief and a broad delegation clause.

> The parties intend that all claims between them covered by this Agreement are to be resolved through binding arbitration to the fullest extent permitted by law. **If,**

> **however, an arbitration award would not be effective without provisional relief such as a preliminary injunction or temporary restraining order, either party may request relief from a court of competent jurisdiction pending jurisdiction**. . . .
>
> The arbitrator, not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the **interpretation, applicability, enforceability, or formation of this Agreement**, including without limitation any claim that this Agreement is void or voidable.

(*Id*. at 2, 4 (emphasis added).)

Here, as in *Manlove*, the parties have clearly and unmistakably agreed that disputes over "interpretation" and "applicability" should be decided by the arbitrator. (*Id*. at 4.) Therefore, the Court must compel arbitration so that an arbitrator can rule on the threshold issue of the arbitrability of claims for injunctive relief. *See Manlove*, 2019 WL 2291890, at *4. Yet, there remains "a tension when a court is forced to choose between providing preliminary injunctive relief and enforcing an agreement to delegate to the arbitrator the decision of whether preliminary injunctive relief is arbitrable." *Id*. Thus, the arbitrator's decision on the arbitrability of claims for injunctive relief should be a quick one. *See id*. The Court will stay this matter pending the arbitrator's ruling, rather than dismiss it. *See* 9 U.S.C. § 3.

## IV. CONCLUSION

For these reasons, the Court will **GRANT IN PART** Defendants' motion (Doc. 9) to the extent it seeks an order compelling arbitration. The Court will **ORDER** the parties to arbitrate the underlying claims. The Court will **DENY IN PART** Defendants' motion (Doc. 9) to the extent it seeks dismissal rather than a stay of proceedings. *See* 9 U.S.C. § 3. The Court will **STAY** the case pending the arbitrator's decision on the arbitrability of Plaintiff's motion for injunctive relief (Doc. 15). Should the arbitrator find Plaintiff's motion for injunctive relief to be arbitrable, the Court will dismiss the action. Should the arbitrator find Plaintiff's motion for injunctive relief not

to be arbitrable, Plaintiff may file a motion to lift the stay, and this case will continue. Thus, Plaintiff's motion for injunctive relief (Doc. 15) will remain pending.

The parties shall **FILE** a joint report on the status of the arbitration proceedings within two months of the date of this Order, and every two months thereafter until the case is dismissed or the Court orders otherwise.

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**